## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 15 |
| | ) |
| ALNO AG, | ) Case No. 18-12651 (KJC) |
| | ) |
| Debtor in a Foreign Proceeding. | ) |

## OBJECTION OF WHIRLPOOL CORPORATION AND MARC BITZER TO THE MOTION OF TOBIAS WAHL FOR AN ORDER GRANTING RECOGNITION OF FOREIGN MAIN PROCEEDING AND RELATED RELIEF

**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
Madlyn Gleich Primoff
Henry Hutten
601 Lexington Avenue
31st Floor
New York, NY  10022
Telephone:  (212) 277-4000
*Email:*  Madlyn.Primoff@Freshfields.com
            Henry.Hutten@Freshfields.com

*Attorneys for Whirlpool Corporation and Marc Bitzer*

**POTTER ANDERSON & CORROON LLP**
Jeremy W. Ryan (DE Bar No. 5210)
D. Ryan Slaugh (DE Bar No. 6325)
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19801
Telephone:  (302) 984-6000
Email:  jryan@potteranderson.com
            rslaugh@potteranderson.com

*Attorneys for Whirlpool Corporation and Marc Bitzer*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ......................................................................................1

BACKGROUND ..........................................................................................................3

    A.    The Parties And Relevant Entities .............................................3

    B.    The Motion..........................................................................5

    C.    Alno's Potential Claims Against Bauknecht, Whirlpool and Bitzer............5

    D.    No Interparty Discovery Is Available to Bauknecht, Whirlpool or Bitzer in Germany..........................................................................7

    E.    The Insolvency Administrator May Be Hiding Behind the Foreign Representative to Avoid this Court's Jurisdiction .......................9

ARGUMENT ...........................................................................................................10

    I.    ONE-WAY DISCOVERY FROM THE WHIRLPOOL OBJECTORS SHOULD BE DENIED................................................................................10

        A.  Section 1522 of the Bankruptcy Code Requires the Interests of the Whirlpool Objectors and Bauknecht To Be "Sufficiently Protected." ............11

        B.  Granting One-Way Discovery to the Foreign Representative Would Unfairly Prejudice the Whirlpool Objectors and Bauknecht in a Case of Enormous Proportions. ................................................................11

        C.  The Insolvency Administrator Should Not Be Permitted To Avoid Producing Documents and Giving Testimony.................................14

    II.    IF THIS COURT AUTHORIZES DISCOVERY, IT SHOULD BE CONDITIONED ON A MEANINGFUL EXCHANGE OF INFORMATION....15

    A.  This Court Has Broad Discretion To Require A Two-Way Exchange of Information From All Relevant Parties as a Condition to Relief..........................16

    B.  This Court Should Exercise Its Discretion To Require a Mutual Exchange From the Foreign Representative and the Insolvency Administrator. ...................17

CONCLUSION........................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re AJW Offshore, Ltd.*,
   488 B.R. 551 (Bankr. E.D.N.Y. 2013)..............................................................11, 16

*In re Cal. State Teachers' Ret. Sys.*,
   2016 U.S. Dist. LEXIS 179897 (D.N.J. Dec. 28, 2016)......................................13

*N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*,
   930 A.2d 92 (Del. 2007)........................................................................................12

*In re Cinque Terre Fin. Grp. Ltd.*,
   2017 Bankr. LEXIS 3786 (Bankr. S.D.N.Y. Oct. 24, 2017)................................17

*In re Consorcio Minero, S.A.*,
   2012 U.S. Dist. LEXIS 44317 (S.D.N.Y. Mar. 29, 2012)....................................18

*In re Esses*,
   101 F.3d 873 (2d Cir. 1996)..................................................................................17

*In re Hanjin Shipping Co.*,
   2016 Bankr. LEXIS 3986 (Bankr. D.N.J. Sept. 20, 2016)...................................16

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)...............................................................................................17

*In re Int'l Banking Corp. B.S.C.*,
   439 B.R. 614 (Bankr. S.D.N.Y. 2010)..................................................................16

*Kulzer v. Esschem, Inc.*,
   390 Fed. App'x 88 (3d Cir. 2010)........................................................................13

*In re Loy*,
   380 B.R. 154 (Bankr. E.D. Va. Dec. 18, 2007) ...................................................15

*Minatec Fin. S.A.R.L. v. SI Grp., Inc.*,
   2008 WL 3884374 (N.D.N.Y. Aug. 18, 2018) .....................................................17

*In re Porsche Automobil Holding, S.E.*,
   2016 WL 702327 (S.D.N.Y. Feb. 18, 2016).........................................................13

*In re Quimonda AG*,
   462 B.R. 165 (Bankr. E.D. Va. 2011)...................................................................12

STATUTES

11 U.S.C. § 1501...............................................................................................................14

11 U.S.C. § 1506...............................................................................................................12

11 U.S.C. § 1509.............................................................................................2, 10, 15, 18

11 U.S.C. § 1521 ..................................................................................................... *passim*

11 U.S.C. § 1522 ..................................................................................................... *passim*

IMPAC 6022740v.1

Whirlpool Corporation ("**Whirlpool**") and Marc Bitzer ("**Bitzer**," and together with Whirlpool, the "**Whirlpool Objectors**"), for their objection (the "**Objection**") to the motion (the "**Motion**" (Dkt. No. 4))[1] dated November 20, 2018, for recognition of a foreign main proceeding filed by Tobias Wahl (the "**Foreign Representative**" or "**Wahl**"), as the asserted foreign representative of Alno AG ("**Alno**"), respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Foreign Representative has commenced this Chapter 15 case for the primary purpose of unfairly obtaining one-sided discovery in support of, and creating a one-sided record in (a) claims asserted in Germany to recover a staggering sum of €175 million against Bauknecht Hausgeräte GmbH ("**Bauknecht**")—a wholly owned subsidiary of Whirlpool and a significant creditor of Alno, and (b) an investigation by the administrator of Alno's estate in Germany (the "**Insolvency Administrator**") into potential German-law claims against the Whirlpool Objectors.

2.      Each of the claims that the Insolvency Administrator purports to assert against Bauknecht, Whirlpool and Bitzer are premised on the assertion that Alno did not timely file for insolvency protection as required under German law.  Despite the fact that the Insolvency Administrator (and likely the Foreign Representative) has access to tens of thousands of internal Alno documents that could support (or undermine) such an assertion, the Foreign Representative seeks leave of this Court to propound additional, broad, U.S.-style discovery requests on the Whirlpool Objectors, notwithstanding the lack of any mechanism for Bauknecht, Whirlpool or Bitzer to obtain remotely similar discovery in litigation in Germany.  As explained in the Declaration of Dr. Hans-Patrick Schroeder dated December 10, 2018 and filed

---

[1]      References to a "Dkt. No." or "Dkt. Nos." refer to the docket entries in the above-captioned Chapter 15 case.

contemporaneously herewith (the "**Schroeder Declaration**"), German law does not provide for general discovery between litigants.

3.      The Insolvency Administrator's tactics also appear designed to create one-sided access to key information.  Had the Insolvency Administrator acted as foreign representative here and commenced this Chapter 15 case himself, then section 1509 of the Bankruptcy Code—which allows a foreign representative to "sue and be sued" upon recognition of a foreign proceeding—would have permitted the Whirlpool Objectors to initiate discovery proceedings in this Chapter 15 case against the Insolvency Administrator.  *See* 11 U.S.C. § 1509(b)(1).  But, in an apparent attempt to avoid being subjected to document discovery and deposition testimony under U.S. discovery rules, the Insolvency Administrator chose not to commence this Chapter 15 case himself.  Rather, the Insolvency Administrator deployed one of his partners, the Foreign Representative, to commence this case for the purpose of obtaining one-sided discovery from the Whirlpool Objectors for use in German litigation.  Consistent with this apparent one-sided discovery strategy, the Insolvency Administrator to date has not agreed to the repeated requests of Whirlpool and Bauknecht to share key historical Alno financial information and documents, notwithstanding that such information forms the basis for nearly all of the Insolvency Administrator's staggering €175 million claim against Bauknecht.

4.      Given the paucity of discovery between litigants available in Germany, if this Court grants the Motion and authorizes the Foreign Representative to seek one-sided, U.S.-style discovery from the Whirlpool Objectors, it will result in a vast informational imbalance in any litigation in Germany, to the severe and unfair prejudice of the Whirlpool Objectors and Bauknecht.  Thus, the Motion fails the test of section 1522(a), which requires that, before the Foreign Representative is entitled to relief, the interests of creditors (such as Bauknecht) and

interested parties (such as the Whirlpool Objectors, one of whom is a citizen of Delaware) must be "sufficiently protected."

5.      Pursuant to section 1522, the Court also has broad discretion to impose any "conditions it deems appropriate" in order to ensure that the interests of the Whirlpool Objectors and Bauknecht are sufficiently protected.  *See* 11 U.S.C. § 1522(b).  To avoid the severe and unfair prejudice that would result from providing the Foreign Representative with one-sided discovery, the Whirlpool Objectors should receive an exchange of documents from not only the Foreign Representative, but also from the Insolvency Administrator, whose team sits in Alno's offices and enjoys full access to its files.  *See* Schroeder Decl. ¶ 7.[2]  Thus, if this Court grants the Foreign Representative leave to seek discovery from the Whirlpool Objectors, it should, consistent with U.S. Supreme Court precedent and section 1522, require both the Foreign Representative and the Insolvency Administrator to commit to a mutual, meaningful exchange of information as described below, and to submit to the jurisdiction of this Court to resolve any disputes about the scope of the exchange *before* requiring the Whirlpool Objectors to provide discovery.

## BACKGROUND

### A.  The Parties And Relevant Entities

6.      Whirlpool is a publicly traded Delaware corporation that manufactures appliances.  Its principal executive offices are located in Benton Harbor, Michigan.  *See* Whirlpool 2017 Annual Report, Form 10-K at 1, 3 (Feb. 13, 2018).  Bitzer is Whirlpool's Chief

---

[2]      References to the "Schroeder Decl." are to the Declaration of Dr. Hans-Patrick Schroeder, dated December 10, 2018, and submitted contemporaneously with this Objection pursuant to, *inter alia*, Federal Rule of Civil Procedure 44.1.

Executive Officer.  *Id.* at 89.[3]

7.     Bauknecht manufactures and distributes household appliances, refrigeration, and air conditioning products.  Bauknecht is a wholly owned, indirect subsidiary of Whirlpool and is based in Stuttgart, Germany.  *See* Bloomberg Company Overview of Bauknecht Hausgeräte GmbH,  https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=5496035. According to the Foreign Representative, Bauknecht is the "main creditor" and was "consistently the largest creditor" of Alno.  Wahl Decl. ¶¶ 13, 26.[4]

8.     Alno commenced an insolvency proceeding (the "**German Proceeding**") in the lower court of Hechingen, Baden-Wuerttemberg (the "**German Court**") on July 12, 2017.  *Id.* at ¶ 2.  Before commencing the German Proceeding, Alno engaged in the development, production and sale of kitchen furniture, electronic appliances and accessories.  *Id.* at ¶ 8.  Prior to insolvency, Alno was headquartered in Pfullendorf, Germany.  *Id.*  On August 29, 2017, the German Court converted the German Proceeding from a provisional debtor-in-possession reorganization proceeding into a "regular" provisional German reorganization proceeding in which the Insolvency Administrator took charge of reorganizing Alno's estate.  *See* Schroeder Decl. ¶ 6.  Accordingly, as of August 29, 2017, Alno's management was no longer responsible for running the business of the company.  *See id.*; Wahl Decl. ¶ 2.  On October 1, 2017, the German Court commenced non-provisional, "main" insolvency proceedings.  *See* Schroeder Decl. ¶ 7; Wahl Decl. ¶ 2.

9.     Dr. Martin Hörmann is the Insolvency Administrator appointed by the German

---

[3]     Pursuant to Local Rule 9013-1(h), the Whirlpool Objectors hereby state that they do not consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

[4]     References to the "Wahl Decl." are to the Declaration of Tobias Wahl in Support of the Motion, dated November 19, 2018 (Dkt. No. 3).

Court. *See* Wahl Decl. ¶ 2. In his official capacity, the Insolvency Administrator is responsible for administering the German Proceeding, and has both the right and obligation to dispose of Alno's assets. *Id.* He has possession and control over Alno's internal documents. *See* Schroeder Decl. ¶ 7. Indeed, the Insolvency Administrator has a team sitting in Alno's offices. *Id.*

10.     The Foreign Representative was appointed by the German Court on October 18, 2018 to act as Alno's representative "for the specific purpose of handling assets and claims located in the United States, including filing for Chapter 15 registration under the Bankruptcy Code." Wahl Decl. ¶¶ 3-4; *see also* Dkt. No. 1 (Oct. 23, 2018 German Court Order at 1-2). As the Foreign Representative admits, he is a partner of the Insolvency Administrator, *see* Wahl Decl. ¶ 2, and works together with the Insolvency Administrator at a 38-person law firm in Germany, *see* http://www.anchor.eu/en/anchor-rechtsanwaelte/team.html.

**B.  The Motion**

11.     The primary purpose of the Motion is to seek broad, U.S.-style discovery pursuant to 11 U.S.C. § 1521(a)(4) "relating to [Alno's] claims against Bauknecht that," according to the Foreign Representative, "have been asserted in the German Proceeding, and potential causes of action against Whirlpool, and Mr. Bitzer." Wahl Decl. ¶¶ 38, 46-47; Motion ¶¶ 15-16, 29-30 (emphasis added).[5]

**C.  Alno's Potential Claims Against Bauknecht, Whirlpool and Bitzer**

12.     Under German insolvency law, the management of a public German stock corporation such as Alno generally must commence insolvency proceedings within three weeks

---

[5]     Although the Insolvency Administrator sent Bauknecht a 115-page letter asserting in detail the purported bases for his tort and avoidance claims against Bauknecht, *see* Schroeder Decl. ¶ 15, German counsel for Bauknecht is unaware of any formal legal proceedings the Insolvency Administrator has commenced asserting such claims. *Id.* at ¶ 19.

after experiencing cash flow insolvency (illiquidity) or balance sheet insolvency (over-indebtedness).  Schroeder Decl. ¶ 10.  Under the German Insolvency Code, a company generally is illiquid if it lacks the cash or cash equivalents to meet more than 90% of the currently due debt.  *Id.*  Under the German Insolvency Code, a company is over-indebted if its assets no longer cover its liabilities, unless there is more than a 50% chance the corporation will avoid illiquidity during the current and next fiscal year.  *Id.*  If the company experiences either of these events, then management has no discretion about when (or whether) to initiate insolvency proceedings.  Rather, it must do so at the latest within three weeks, or members of the management board can face personal civil and criminal liability.  *Id.*

13.     The Foreign Representative contends that Alno's management should have commenced the German Proceeding as early as 2013.  *See* Wahl Decl. ¶¶ 21-22.  This contention is based on the purported findings of Andersch AG ("**Andersch**")—a German certified public accounting firm commissioned by the Insolvency Administrator to examine the date on which Alno first experienced illiquidity or over-indebtedness as a matter of German law.  *Id.*

14.     The Foreign Representative further contends that "Bauknecht, Whirlpool and Bitzer knew that [Alno] was insolvent and obligated to file for the commencement of insolvency proceedings," but that Bauknecht nevertheless extended additional financing to Alno and thereby "delayed the commencement of [Alno's] insolvency proceedings."  *Id.* at ¶ 28-30.  Although the Foreign Representative's allegations are vague, it appears that the Foreign Representative contends that Bauknecht delayed the commencement of the German Proceeding for its own benefit, including so that it could "continue using [Alno's] brands to market Bauknecht's products long after [Alno] should have stopped operating its business."  *Id.* at 29-30.

15.     Based on these allegations, the Foreign Representative alleges that the "German

Insolvency Administrator has asserted avoidance claims against Bauknecht in the German Proceeding under the German Insolvency Code, as well as claims under German tort law." *Id.* at ¶ 33. The Insolvency Administrator also seeks to recover certain loan payments and the "difference between what is available to all creditors compared with what would have been available" had Bauknecht refrained from allegedly delaying Alno's insolvency filing. *Id.* at ¶¶ 31-32. In total, the Insolvency Administrator seeks to recover the *staggering* sum of roughly €175 million from Bauknecht. Schroeder Decl. ¶¶ 14, 17.n4.

16.    The Foreign Representative also claims that the Insolvency Administrator is investigating potential claims against Whirlpool and Bitzer for supposedly having "aided and abetted Bauknecht" in delaying the commencement of Alno's insolvency proceedings. Wahl Decl. ¶ 35. While counsel for the Foreign Representative has represented to this Court that the Foreign representative "may seek to pursue some litigation in the United States on behalf of the [[F]oreign [R]epresentative," *see* Nov. 26, 2018 Hearing Tr. at 6:25-7:2, *In re Alno AG*, No. 18-12651 (Bankr. D. Del.), the Foreign Representative elsewhere suggests that his potential causes of action against Bitzer and Whirlpool are located in Germany. *See* Mot. ¶ 4.

### D. No Interparty Discovery Is Available to Bauknecht, Whirlpool or Bitzer in Germany

17.    As the German Court-appointed Insolvency Administrator in the German Proceeding, *see* Wahl Decl. ¶¶ 2, 40, the Insolvency Administrator has access to and control over Alno's files. Schroeder Decl. ¶ 7. For example, the Foreign Representative admits that the Insolvency Administrator and those acting under his control have reviewed "approximately 60,000 e-mails and other documents" related to the business of Alno and its affiliates. Wahl Decl. ¶ 36. The Insolvency Administrator provided many of these documents to Andersch, which relied upon them in drafting its report (the "**Andersch Report**") concerning the timeframe

in which Alno first experienced illiquidity or over-indebtedness as a matter of German

insolvency law.  *See* Schroeder Decl. ¶ 12.[6]

18.    Even though the Andersch Report provides the grounds upon which the

Insolvency Administrator purports to assert claims in Germany against Bauknecht for

approximately €175 million, the Insolvency Administrator has to date not shared with

Bauknecht, Whirlpool or Bitzer any of the documents that Andersch considered or relied on in

expressing the conclusions in the Andersch Report—despite the requests of German counsel for

Whirlpool and Bauknecht that he do so.  *Id.* at ¶ 13.  Nor has the Insolvency Administrator

provided any other information to Bauknecht, Whirlpool or Bitzer, including internal Alno

documents concerning Alno's liquidity or indebtedness between 2013 and the commencement of

the German Proceeding.  *Id.*[7]

19.    In addition, as explained in the Schroeder Declaration, there is no concept of

general discovery in German litigation as it exists here in the United States.  *See id.* at ¶¶ 20–26.

While petitions may be made for a court order for a party to produce specific documents, these

petitions are rarely granted unless there is a substantive civil law rule that grants a substantive

---

[6]    Although this Objection refers to the "Andersch Report," German counsel for Whirlpool and Bauknecht understands that more than one Andersch Report exists, including those referred to by the Insolvency Administrator in the court file for the German Proceeding.  *See* Schroeder Decl. ¶ 12 n.3.

[7]    The documents and information referred to in paragraph 18 are unquestionably critical to the defense of the Insolvency Administrator's claims against Bauknecht, Whirlpool and Bitzer. If Alno did not become illiquid or over-indebted as a matter of law until within three weeks of the commencement of the German Proceeding, then Alno would have timely commenced the German Proceeding, Bauknecht necessarily could not have caused any improper delay, and Whirlpool and Bitzer necessarily could not have aided or abetted Bauknecht in causing any such delay.  *See* Schroeder Decl. ¶¶ 10, 14-18.  Moreover, to the extent that Alno was required to commence the German Proceeding later than August 2013 (the timeframe in which the Insolvency Administrator claims that Alno was required to do so), this would reduce the number of transfers that the Insolvency Administrator may be entitled to recover, and any damages to Alno's creditors that allegedly resulted from causing Alno to delay commencement of the German Proceeding.  *See id.*

right to access the documents in the possession of another—which Bauknecht, Whirlpool and Bitzer do not possess here. *Id.* at ¶¶ 24, 27. Rather, Bauknecht, Whirlpool and Bitzer likely would be able to obtain such documents in German litigation, if at all, only if the Insolvency Administrator chooses to specifically identify such documents in a pleading. *See id.* at ¶ 27. This effectively allows the Insolvency Administrator to determine which Alno documents Whirlpool, Bauknecht and Bitzer may obtain, and, perhaps more importantly, which Alno documents become part of the court record in any litigation in Germany. *Id.*

20.    For Bauknecht to defend itself in Germany (and for Whirlpool and Bitzer to defend themselves in the U.S. or Germany as applicable), they all require access to (1) the documents that Andersch considered or relied upon when rendering the opinions in the Andersch Report, and (2) additional internal Alno documents bearing on the company's financial condition, including its liquidity position and indebtedness between 2013 and the commencement of the German Proceeding on July 12, 2017. *Id.* at ¶ 28. Accordingly, granting one-sided, broad, U.S.-style discovery to the Foreign Representative in the instant Chapter 15 case, without also affording the Whirlpool Objectors an opportunity for equal discovery, would inject a severe level of informational disparity into any potential litigation in Germany, to the unfair and severe prejudice of Bauknecht, Whirlpool and Bitzer. *Id.* at ¶¶ 28-29.

**E.  The Insolvency Administrator May Be Hiding Behind the Foreign Representative to Avoid this Court's Jurisdiction**

21.    The German Court's order appointing Wahl as the Foreign Representative makes it clear that the Foreign Representative's powers to conduct proceedings in the United States are identical to those that the Insolvency Administrator would have possessed had he commenced the above-captioned Chapter 15 case:

> To fulfill his functions, the special insolvency administrator shall be entitled to perform all of the same actions, to take all the same measures and to issue all of

the same declarations that the insolvency administrator would be entitled to with respect to such ancillary insolvency proceeding, as if the insolvency administrator initiated such ancillary insolvency proceeding.

Dkt. No. 1 (Oct. 23, 2018 German Court Order at 1-2).  It is also clear that the Insolvency Administrator and the Foreign Representative will be closely coordinating the German Proceeding and this Chapter 15 case, given that they are partners at the same law firm in Germany.  *See* Wahl Decl. ¶ 2.  Notably, however, the German Court's order does not specify whether the Foreign Representative has possession of or control over Alno's internal documents. Dkt. No. 1 (Oct. 23, 2018 German Court Order at 1-2).  And as a practical matter, the Insolvency Administrator may not permit the Foreign Representative to access Alno's internal documents if such access could lead to the documents being produced to the Whirlpool Objectors so they can use such documents to defend themselves against the Insolvency Administrator's claims in Germany.  Schroeder Decl. ¶ 9.

22.    It therefore appears that the Insolvency Administrator may be relying on the Foreign Representative to carry out this Chapter 15 case so the Insolvency Administrator can avoid subjecting himself (and the Alno documents in his possession and control) to this Court's jurisdiction, while at the same time maintaining de facto control over the Chapter 15 case.  *See* 11 U.S.C. § 1509(b)(1).

## ARGUMENT

### I.    ONE-WAY DISCOVERY FROM THE WHIRLPOOL OBJECTORS SHOULD BE DENIED

23.    To the extent that the Motion seeks one-way discovery from the Whirlpool Objectors, it should be denied pursuant to section 1522 of the Bankruptcy Code.

**A.  Section 1522 of the Bankruptcy Code Requires the Interests of the Whirlpool Objectors and Bauknecht To Be "Sufficiently Protected."**

24.     Section 1521 of the Bankruptcy Code provides that upon recognition of a foreign proceeding, this Court "may," at the request of a foreign representative, grant discovery relief, including the examination of witnesses, taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities.  11 U.S.C. § 1521(a)(4). However, section 1522 of the Bankruptcy Code provides that the Court may grant relief under section 1521 "only if the interests of the creditors and other interested entities" are "sufficiently protected."  11 U.S.C. § 1522(a); *see also In re AJW Offshore, Ltd.*, 488 B.R. 551, 558 (Bankr. E.D.N.Y. 2013) (a bankruptcy court may allow a foreign representative "to utilize turnover subject, as § 1521 requires, to sufficient protections under § 1522"); *In re Cinque Terre Fin. Grp. Ltd.*, 2017 Bankr. LEXIS 3786, at *41 (Bankr. S.D.N.Y. Oct. 24, 2017) (same).  The statute makes clear on its face that this Court is given wide latitude to assure that discovery relief is not granted to the Foreign Representative if doing so would, as here, unfairly prejudice the rightful interests of creditors and interested parties such as Bauknecht and the Whirlpool Objectors.

**B.  Granting One-Way Discovery to the Foreign Representative Would Unfairly Prejudice the Whirlpool Objectors and Bauknecht in a Case of Enormous Proportions.**

25.     As described above, one of the primary issues relating to the Insolvency Administrator's purported claims against Bauknecht, Whirlpool and Bitzer is the timeframe in which Alno became insolvent as a matter of German law.  This timeframe is meaningful under German law because of the mandatory requirement for companies to file for insolvency protection upon the occurrence of certain accounting conditions—a requirement that arguably

is manifestly contrary to U.S. public policy for purposes of section 1506 of the Bankruptcy Code.[8]

26.     In conducting his investigation in Germany, and developing his alleged claims against Whirlpool, Bauknecht and Bitzer, the Insolvency Administrator already has access to at least "approximate 60,000 e-mails and other documents" in the files of Alno.  *See* Wahl Dec. ¶ 36.  Bauknecht, Whirlpool and Bitzer do not have access to these documents.  *See* Schroeder Decl. ¶ 23.  Nor do they have any access to the documents that Andersch considered or relied on in issuing the Andersch Report, in which Andersch opined that Alno was supposedly insolvent as early as 2013.  The Insolvency Administrator has not provided these documents to date, despite Whirlpool and Bauknecht's repeated requests.  *See id.*

27.     As described more fully in the Schroeder Declaration, German procedural rules do not provide for general discovery, but only allow for disclosure on a document-by-document basis and only if a document can be specifically identified.  *See* Schroeder Decl. ¶¶ 20-26.  As U.S. courts have consistently recognized, the German legal system does not allow for the same type of category-by-category discovery that the Foreign Representative requests to seek from

---

[8]     In particular, the German laws that require the management of a public stock company to file for insolvency protection within three weeks of experiencing insolvency deprive a company's board of discretion about how to maximize value in an insolvency context.  By contrast, the U.S. Bankruptcy Code requires that any voluntary petition for relief under Chapter 7 or 11 by a corporation be accompanied by a supporting authorization of its board of directors, and such authorization must be given based on the board's reasonable business judgment, exercised consistently with the board's fiduciary duties to all stakeholders.  *See N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 93 (Del. 2007) ("Directors of insolvent corporations *must* retain the freedom to engage in vigorous, good-faith negotiations for the benefit of the corporation.") (emphasis added).  Thus, the German laws imposing mandatory filing requirements are "manifestly contrary" to the fundamental U.S. federal- and state-law policies of placing the filing decision at the discretion of the board to be exercised consistently with its fiduciary duties.  This arguably provides a basis to deny Chapter 15 relief altogether pursuant to section 1506 of the Bankruptcy Code.  *See In re Quimonda AG*, 462 B.R. 165, 185 (Bankr. E.D. Va. 2011) (refusing, pursuant to section 1506, to recognize a German court judgement when doing so would "undermine a fundamental U.S. public policy").

Whirlpool and Bitzer here pursuant to United States discovery rules. *See Kulzer v. Esschem, Inc.*, 390 Fed. App'x 88, 92 (3d Cir. 2010) ("German civil procedure does not offer a mechanism for general pretrial discovery comparable to that obtainable in the United States; any request to the German court must be for specific documents."); *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 596 (7th Cir. 2011) ("A party to a German lawsuit cannot demand categories of documents from his opponent.  All he can demand are documents that he is able to identify specifically—individually, not by category."); *In re Cal. State Teachers' Ret. Sys.*, 2016 U.S. Dist. LEXIS 179897, at *7 (D.N.J. Dec. 28, 2016) ("there is no concept of discovery in Germany"); *In re Porsche Automobil Holding, S.E.*, 2016 WL 702327, at *2 (S.D.N.Y. Feb. 18, 2016) ("Here, although there is some quibbling among the experts about the availability in the German court of the documents and the testimony sought here, there is little question that it cannot and, in any case, would not order the type (and scope) of evidentiary production sought by Porsche in this Court.").  Therefore, in any litigation in Germany, Bauknecht, Whirlpool and Bitzer likely will be able to obtain documents underlying the Andersch Report or other internal Alno documents only if the Insolvency Administrator chooses to specifically identify them in a pleading. *See* Schroeder Decl. ¶ 27.

28.    Thus, the Insolvency Administrator will be able unilaterally to select the Alno documents to which Bauknecht, Whirlpool and Bitzer have access, and would thereby have sole control at the outset of the litigation over which of these documents become part of the court record. *See id.*  And, because the Insolvency Administrator is compensated based on the amounts he recovers for Alno's estate, he has no incentive to disclose voluntarily any documents or information that will be helpful to Bauknecht, Whirlpool or Bitzer. *See id.* at ¶ 7.

29.    Accordingly, if the Court authorizes one-way U.S.-style discovery from the

Whirlpool Objectors, this would exacerbate the already severe informational imbalance in any German litigation; not only would the Insolvency Administrator have sole access to Alno's documents, he would also have access to a potentially broad array of information from Whirlpool and Bitzer.  Bauknecht, Whirlpool and Bitzer would be deprived unfairly of access to the key facts, and of the ability to supplement the record in any litigation in Germany with, *inter alia*, documents that were omitted from or contravene the Insolvency Administrator's own analysis of the purported facts.

30.    Such a result would *severely prejudice* Bauknecht, Whirlpool and Bitzer in a €175 million dispute, in contravention of the requirement in section 1522 that, before granting relief to the Foreign Representative under section 1521, the interests of creditors and other interested parties must be "sufficiently protected."  Moreover, such a result would deprive the German courts of a full presentation of the evidence, in stark contravention of one of the fundamental purposes of Chapter 15, which is the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities."  11 U.S.C. § 1501(3).  Accordingly, to the extent the Motion seeks one-way discovery from the Whirlpool Objectors, it should be denied.

### C. The Insolvency Administrator Should Not Be Permitted To Avoid Producing Documents and Giving Testimony.

31.    The severe and unfair prejudice to the Whirlpool Objectors and Bauknecht, standing alone, suffices to justify denying the Foreign Representative's request for leave to take discovery.  However, there is an additional reason that such denial is warranted here.  Had the Insolvency Administrator sought discovery himself by commencing this Chapter 15 case as a foreign representative, then the Whirlpool Objectors could have attempted to rectify the resulting informational imbalance by initiating discovery proceedings against the Insolvency

Administrator pursuant to section 1509 of the Bankruptcy Code.  That section allows a foreign representative, upon recognition of a foreign proceeding, "to sue and be sued" within the scope of matters relating to its Chapter 15 case.  11 U.S.C. 1509(b)(1); *see also*, *e.g.*, *In re Loy*, 380 B.R. 154, 171 (Bankr. E.D. Va. Dec. 18, 2007) (denying a foreign representative's motion for an injunction against the plaintiff's state-court lawsuit, and, "to the extent required by 11. U.S.C. § 1509, permit[ing] [the plaintiff] to file suit in state court" against that foreign representative).[9]

32.    Here, however, the Insolvency Administrator chose not to commence the requested Chapter 15 action, and instead sent his partner, the Foreign Representative, to initiate proceedings.  By declining to commence this Chapter 15 case himself, the Insolvency Administrator has apparently sought to shield himself from producing documents, testimony and other information that Bauknecht and the Whirlpool Objectors could use to defend themselves.  This Court should exercise its broad equitable powers and not allow the Insolvency Administrator to use such tactics to obtain one-way discovery from the Whirlpool Objectors.

## II.    IF THIS COURT AUTHORIZES DISCOVERY, IT SHOULD BE CONDITIONED ON A MEANINGFUL EXCHANGE OF INFORMATION

33.    The Whirlpool Objectors respectfully submit that any recognition of the German Proceeding pursuant to Chapter 15, and, concomitantly, any grant of discovery pursuant to section 1521(a)(4) or otherwise, must assure that the Whirlpool Objectors and Bauknecht are "sufficiently protected" through mutual, two-sided, even-handed discovery.   11 U.S.C. § 1522(a).

---

[9]     The Whirlpool Objectors reserve their right, pursuant to section 1509(b)(1), to initiate proceedings in the above-captioned Chapter 15 case seeking discovery from the Foreign Representative.

### A.  This Court Has Broad Discretion To Require A Two-Way Exchange of Information From All Relevant Parties as a Condition to Relief.

34.     In aid of this Court's obligation to ensure that interests of Whirlpool, Bitzer and Bauknecht are "sufficiently protected" when granting discovery relief to a foreign representative pursuant to section 1521(a)(4) or Rule 2004, section 1522(b) affords this Court broad discretion to grant such relief on any "conditions it deems appropriate."  11 U.S.C. § 1522(b).  *See also In re AJW Offshore*, 488 B.R. at 558, 561 (allowing foreign representatives to seek discovery, but requiring them to "do so by motion on notice with an opportunity for a hearing" so that the court could "make a case-by-case analysis of whether to order turnover in a specific circumstance and, if so, under such conditions as § 1522 requires to sufficiently protect the interests of creditors and the affected parties").

35.     The purpose behind section 1522(b)'s grant of discretion is to allow courts to achieve "a balance between relief that may be granted to the foreign representative and the interests of the persons that may be affected by such relief."  *In re Int'l Banking Corp. B.S.C.*, 439 B.R. 614, 626 (Bankr. S.D.N.Y. 2010).  "Standards that inform the analysis of § 1522 protective measures in connection with discretionary relief emphasize the need to tailor relief granted to the foreign representative and the interests of those affected by such relief, without unduly favoring one group of creditors over another."  *In re Hanjin Shipping Co.*, 2016 Bankr. LEXIS 3986, at *19 (Bankr. D.N.J. Sept. 20, 2016); *see also In re AJW Offshore, Ltd.*, 488 B.R. at 559 ("[A]ccess to turnover powers under § 1521(a)(7) is conditioned upon sufficient protections being provided to creditors and other interested parties under § 1522 which requires a balancing of the respective parties' interests.").

36.     Notably, in the analogous context of discovery petitions filed pursuant to 28

U.S.C. § 1782 ("**Section 1782**"),[10] courts have consistently addressed concerns about informational disparity between litigants in foreign proceedings by conditioning the courts' grant of discovery on the petitioner's agreement to engage in a mutual exchange of information.  "Consistently, the Second Circuit, and the Supreme Court have suggested that a district court could condition relief upon a reciprocal exchange of information, as such would lend parity to the disclosure mix." *Minatec Fin. S.A.R.L. v. SI Grp., Inc.*, 2008 WL 3884374, at *9 (N.D.N.Y. Aug. 18, 2018) (ordering that the respondent "shall have reciprocal discovery from" the petitioner); *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 262 (2004) ("When information is sought by an 'interested person,' a district court could condition relief upon that person's reciprocal exchange of information.").  Indeed, conditioning discovery on a mutual exchange is particularly appropriate where, as here, the targets of the requested discovery have no adequate process in Germany by which to seek discovery that is anywhere near as broad as is authorized under the U.S. discovery rules.  *See In re Consorcio Minero, S.A.*, 2012 U.S. Dist. LEXIS 44317, at *10 (S.D.N.Y. Mar. 29, 2012) (ordering reciprocal discovery where there was "no process by which [the discovery target] can seek and obtain documents from [the Section 1782 petitioner] in the Peruvian proceedings in the manner in which discovery may proceed in the U.S. under 28 U.S.C. § 1782").

### B.  This Court Should Exercise Its Discretion To Require a Mutual Exchange From the Foreign Representative and the Insolvency Administrator.

37.    Consistent with the authorities discussed above, to the extent that this Court is

---

[10]    Section 1782 governs U.S.-court discovery assistance to foreign and international tribunals and to litigants before such tribunals, and therefore has obvious parallels to requests for discovery relief pursuant section 1521(a)(4), including that courts presiding over Section 1782 applications have wide discretion to grant relief on conditions they deem appropriate. *See In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996) ("Section 1782 grants district courts wide discretion to determine whether to grant discovery and equally wide discretion to tailor such discovery to avoid attendant problems.").

inclined to grant discovery to the Foreign Representative, it should condition such relief on its satisfaction that there will in fact be a mutual exchange of relevant information between the Whirlpool Objectors on the one hand, and the Foreign Representative *and* the Insolvency Administrator on the other.  In particular, discovery should be authorized only on the condition that the Foreign Representative and the Insolvency Administrator consent to (i) accept service of and respond (within the proper scope of U.S. discovery rules) to subpoenas that are issued by the authority of this Court, and that seek document and deposition discovery relevant to the claims that the Foreign Representative and the Insolvency Administrator seek to assert against Bauknecht, Whirlpool and Bitzer, and any defenses thereto; and (ii) agree to this Court's jurisdiction to resolve any disputes with respect to the compliance of the Foreign Representative and the Insolvency Administrator with such subpoenas.  Such subpoenas will seek, at a minimum, (a) all documents within the possession, custody or control of the Foreign Representative and the Insolvency Administrator that Andersch relied on or considered in forming the opinions asserted in all current and prior versions of the Andersch Report; (b) documents and testimony in the possession, custody or control of the Foreign Representative and the Insolvency Administrator, including internal Alno documents, concerning the liquidity of Alno; and (c) documents and testimony in the possession, custody or control of the Foreign Representative and the Insolvency Administrator bearing on the indebtedness of Alno.  *See* Schroeder Decl. ¶ 28 & n.7.

38.    As discussed above, the Insolvency Administrator (who unquestionably possesses and controls Alno's documents) has relied on the Foreign Representative (whose ability to obtain such documents may be in question) to commence this Chapter 15 case, apparently seeking to avoid this Court's jurisdiction pursuant to section 1509(b)(1).  Therefore, as a

condition to granting the Foreign Representative leave to seek discovery from the Whirlpool Objectors, both the Foreign Representative and the Insolvency Administrator should be required *first* to appear before this Court and *second* to file papers jointly with the Whirlpool Objectors stipulating to the terms described in the previous paragraph.  Moreover, because the Insolvency Administrator and Foreign Representative are located in Germany, it will be very difficult to enforce an order requiring the Insolvency Administrator and the Foreign Representative to provide discovery to the Whirlpool Objectors.  Thus, to mitigate the risk that the Foreign Representative and Insolvency Administrator fail to comply with such an order after receiving discovery materials from the Whirlpool Objectors, this Court should also condition the Whirlpool Objectors' obligation to provide discovery upon completion of production of documents and testimony from the Foreign Representative and the Insolvency Administrator.

## CONCLUSION

WHEREFORE, the Whirlpool Objectors respectfully request that this Court enter an order denying the Motion, or granting the Whirlpool Objectors even-handed, two-way discovery from both the Foreign Representative and the Insolvency Administrator (as described above) and granting the Whirlpool Objectors such other and further relief as is just and proper.

Dated: December 10, 2018
      Wilmington, Delaware

/s/ *Jeremy W. Ryan*
Jeremy W. Ryan (DE Bar No. 5210)
D. Ryan Slaugh (DE Bar No. 6325)
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19801
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192

-and-

Madlyn Gleich Primoff (*pro hac vice* admission pending)
Henry V. Hutten (*pro hac vice* admission pending)
Freshfields Bruckhaus Deringer US LLP
601 Lexington Avenue
New York, NY 10022
Telephone:  (212) 277-4000
Facsimile:  (212) 277-4001

*Attorneys for Whirlpool Corporation and Marc Bitzer*

IMPAC 6022740v.1