## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 15 |
|  | ) |  |
| ALNO AG, | ) | Case No. 18-12651 (KJC) |
|  | ) |  |
| Debtor in a Foreign Proceeding. | ) |  |

## DECLARATION OF HANS-PATRICK SCHROEDER

Pursuant to 28 U.S.C. § 1746 and Fed. R. Civ. P. 44.1, I, Dr. Hans-Patrick Schroeder, declare:

1.      I am a partner of the law firm Freshfields Bruckhaus Deringer LLP and based in the Hamburg office. Freshfields represents Bauknecht Hausgeräte GmbH ("**Bauknecht**") and Whirlpool Corporation ("**Whirlpool**") in connection with (i) the insolvency proceedings (the "**German Proceeding**") of Alno AG ("**Alno**") taking place before the lower court of Hechingen, Baden-Wuerttemberg (the "**German Court**") pursuant to the German code of insolvency, (the *Insolvenzordnung*, or "**German Insolvency Code**"); (ii) legal claims under German law that Dr. Martin Hörmann, the insolvency administrator (the "**Insolvency Administrator**") of Alno purports to have asserted in Germany against Bauknecht; and (iii) potential legal claims under German law that the Insolvency Administrator seeks to assert against Whirlpool.

2.      I submit this Declaration at the request of Bauknecht and Whirlpool, and in support of the objection (the "**Objection**") of Whirlpool to the Motion of Tobias Wahl for an Order Granting Recognition of Foreign Main Proceeding and Related Relief, which Objection I understand is being submitted concurrently with this Declaration.  I am licensed to practice law

in Germany, and have over 13 years of experience, including experience litigating disputes in Germany that arise out of insolvency.

3.      Below, I describe (i) the German Proceeding; (ii) the provisions of the German Insolvency Code that form the basis for the Insolvency Administrator's claims against Bauknecht; (iii) the Insolvency Administrator's purported claims against Bauknecht, Whirlpool and Marc Bitzer ("**Bitzer**"), Whirlpool's CEO; (iv) the provisions of the German Code of Civil Procedure, (the *Zivilprozessordnung*, or "**ZPO**") that will govern any legal proceedings brought by the Insolvency Administrator in Germany; and (v) the informational disparity to which Bauknecht, Whirlpool and Bitzer will be exposed if this Court authorizes one-sided discovery from Bauknecht, Whirlpool and Bitzer for use in the Insolvency Administrator's litigation in Germany.

4.      My opinions herein are based on my education and experience, on the authorities cited in this declaration, and on my review of the documents that have been submitted or exchanged in connection with the German Proceeding, and the above-captioned Chapter 15 case. The facts stated herein are true to the best of my knowledge and belief, and are either within my own personal knowledge or, where the facts are not within my own knowledge, the source of my information is disclosed.

### The German Proceeding

5.      On July 12, 2017, Alno filed for the opening of the German Proceeding. On July 13, 2017, the German Court ordered a provisional insolvency proceeding over Alno's assets. At that time, Alno's management managed the provisional insolvency proceedings under section

270a of the German Insolvency Code.  The German Court appointed the Insolvency Administrator as provisional custodian supervising the debtor-in-possession.

6.    On August 29, 2017, the German Court converted the German Proceeding from a provisional, debtor-in-possession proceeding into a provisional "regular" German insolvency proceeding in which the Insolvency Administrator, in his official capacity as court-appointed provisional insolvency administrator, took charge of reorganizing Alno's estate.  Accordingly, as of  August 29, 2017, Alno's management was no longer responsible for running the business of the company.

7.    On October 1, 2017, the German Court appointed Dr. Hörmann nonprovisionally as the Insolvency Administrator.  As a result, the Insolvency Administrator has the legal authority to, *inter alia*, administer Alno's estate, dispose of its assets, investigate claims that Alno may be able to assert, and assert such claims against third parties for the benefit of Alno's insolvency estate.  In order to exercise these powers, the Insolvency Administrator has access to, possession of, and control over Alno's books, records, files and documents, including, without limitation, any such files located on Alno's exchange servers or document management systems.  Indeed, I understand that, after his appointment, the Insolvency Administrator took physical possession of Alno's offices, and his team now sits in Alno's offices and enjoys full access to and control over Alno's files.  It also appears that, in connection with asserting his purported claims against Bauknecht, the Insolvency Administrator has reviewed "approximately 60,000 e-mails and other documents" related to the business of Alno and its affiliates.  *See* Wahl Decl.

¶ 36.[1] The Insolvency Administrator's compensation is amongst others based on the amounts that he recovers for Alno's estate.

8.    On October 18, 2018, Tobias Wahl (the "**Foreign Representative**") was appointed by the German Court to act as Alno's representative "for the specific purpose of handling assets and claims located in the United States, including filing for Chapter 15 registration under the Bankruptcy Code." Dkt. No. 1 (Oct. 23, 2018 German Court Order at 1-2).[2]

9.    It is unclear whether the Foreign Representative would be able to obtain Alno's internal documents, if the purpose of doing so was for Whirlpool, Bauknecht or Bitzer to use such documents in litigation against the Insolvency Administrator in Germany.  Pursuant to the German Court's order appointing the Foreign Representative, the Foreign Representative has the authority to engage in actions that would facilitate the "[d]etermination, administration and realization of any assets of [Alno] in the United States," and was specifically authorized "to file for and to conduct on account of the insolvency estate an ancillary insolvency proceeding in the US under Chapter 15 of US Bankruptcy Code." *Id.*  Assuming that obtaining Alno's internal documents were relevant and necessary for the Foreign Representative to perform his duties with regard to the instant Chapter 15 case, then the Foreign Representative may have the authority to obtain such documents from the Insolvency Administrator.  However, even assuming this authority extends to the act of obtaining documents to produce to Whirlpool, Bitzer or Bauknecht

---

[1]    References to the "Wahl Decl." are to the Declaration of Tobias Wahl in Support of his Motion for an Order Granting Recognition of Foreign Main Proceeding and Related Relief, dated November 19, 2018.

[2]    References to a "Dkt. No." or "Dkt. Nos." refer to the docket entries in the above-captioned Chapter 15 case.

for use in litigation in Germany (*i.e.* outside of the Chapter 15 case), there would still be a significant question of whether, as a practical matter, the Insolvency Administrator would refuse to provide any such documents to the Foreign Representative.

### German Law Provides Civil And Criminal Liability For Failure To Place An Insolvent Company Into Insolvency Proceedings

10.     Under the German Insolvency Code, the management of a public German stock corporation must commence insolvency proceedings without undue delay, but at the latest within three weeks after experiencing cash flow insolvency (illiquidity) or balance sheet insolvency (over-indebtedness).  Jurisprudence handed down on the basis of section 17 of the German Insolvency Code generally defines illiquidity as lacking sufficient cash or cash equivalents to meet more than 90% of the currently due debt.  Under section 19 of the German Insolvency Code, a company is over-indebted if its assets no longer cover its liabilities, unless there is more than a 50% chance the corporation will avoid illiquidity during the current and next fiscal year. If the German stock corporation experiences either of these events, management has no discretion about when (or whether) to initiate insolvency proceedings.  Rather, it must do so without undue delay and at the latest within three weeks, or members of the management board can face personal civil and criminal liability.  German law further provides that stakeholders who knowingly act in cooperation to delay a debtor's timely commencement of insolvency proceedings can be subject to liability, including potential civil and criminal liability, for aiding and abetting the debtor's violation.

### The Andersch Report

11.     I understand that the Insolvency Administrator engaged the German CPA firm Andersch AG ("**Andersch**") to analyze if and when Alno became insolvent pursuant to the

German Insolvency Code, and further commissioned Andersch to issue a report (the "**Andersch Report**") discussing when, in Andersch's opinion, the Debtor first became insolvent.

12.     For Andersch to obtain the information necessary to evaluate these questions, and to render the opinions put forth in the Andersch Report, the Insolvency Administrator, or those working under his supervision or control, would have needed to provide Andersch with Alno's internal documents.  Andersch relied on such documents to opine that Alno became cash-flow insolvent as a matter of German law as early as August, 2013.[3]  As described below, the Andersch Report forms the basis for the Insolvency Administrator's purported claims against Bauknecht, and potential claims against Whirlpool and Bitzer.

13.     As counsel to Bauknecht and Whirlpool, Freshfields Bruckhaus Deringer LLP has repeatedly requested copies of the documents that Andersch considered or relied on when drafting the Andersch Report.  However, to date, the Insolvency Administrator has not provided such documents.  Nor has the Insolvency Administrator agreed to provide any other information, including Alno's internal documents bearing on Alno's liquidity and over-indebtedness between 2013 and the commencement of its insolvency proceedings in 2017.

### The Insolvency Administrator's Purported Claims

14.     The Insolvency Administrator asserts certain avoidance claims against Bauknecht in Germany under the German Insolvency Code, as well as claims under German tort law.  In fact, the Foreign Representative contends that the Insolvency Administrator has "asserted avoidance claims against Bauknecht in the German Proceeding under the German Insolvency

---

[3]     Based on Freshfields Bruckhaus Deringer's review of the court file in the German Proceeding, it appears that more than one Andersch Report exists.  It further appears that, based on the Insolvency Administrator's on-the-record discussion of the earlier Andersch Report, Andersch has previously concluded that Alno was not insolvent until the end of 2016.

Code, as well as claims under German tort law." Wahl Decl. ¶ 33. In total, the Insolvency Administrator seeks to recover approximately €175 million from Bauknecht.

15.     To that end, and based upon the opinions in the Andersch Report, the Insolvency Administrator sent a 115-page demand letter, dated 15 August, 2018 (the "**Demand Letter**") to Bauknecht describing the following purported avoidance claims ("**Avoidance Claims**") and tort claims (the "**Tort Claims**" and, together with the Avoidance Claims, the "**Claims**"), all of which are premised on Bauknecht allegedly causing Alno to improperly delay the commencement of its insolvency proceedings:

16.     **Avoidance Claims.** The Insolvency Administrator alleges, as part of Alno's plan with Bauknecht to improperly delay commencement of its insolvency proceedings, that Alno "granted preferential treatment to Bauknecht because payments to Bauknecht assured further financing from Bauknecht and, in doing so, omitted payments to other creditors." Altogether, the Insolvency Administrator asserts four different types of avoidance actions against Bauknecht under Sections 130, 133 and 135 of the German Insolvency Code, seeking to avoid and recover at least €131 million.

17.     **Tort Claims.** The Insolvency Administrator also alleges that Bauknecht violated Section 826 of the German Civil Code by delaying the commencement of Alno's insolvency proceedings by (i) inadequately financing Alno to its own advantage; and (ii) deceiving other creditors about Alno's borrowing capacity. Bauknecht allegedly benefitted from this conduct by, among other things, propping up Alno so that Bauknecht could continue using Alno's brands to market Bauknecht's products after Alno supposedly should have stopped operating its business.

Based on these allegations, the Insolvency Administrator seeks to recover at least €43 million from Bauknecht.[4]

18.    **Potential Claims Against Whirlpool and Bitzer.**  The Insolvency Administrator also claims to be investigating potential tort claims against Whirlpool and Bitzer for supposedly having aided and abetted Bauknecht in delaying the commencement of Alno's insolvency proceedings.  The Insolvency Administrator seeks to assert these claims under German law, as a result of a German insolvency proceeding, and to redress alleged losses to creditors that allegedly occurred in Germany.

19.    Although the Insolvency Administrator has not yet initiated any formal legal proceedings in Germany against Bauknecht, Bitzer or Whirlpool, counsel to the Insolvency Administrator has represented that he is prepared to initiate such proceedings before the end of 2018.

### German Law Does Not Provide For General Discovery

20.    If the Insolvency Administrator asserts the Claims in formal legal proceedings in Germany, he will need to do so in a competent German civil court of first instance, and the rules of procedure will be governed by the ZPO.

21.    Unlike the American legal system, the ZPO does not recognize the concept of general discovery.  Rather, at the outset of the proceeding, parties are generally expected to submit copies of the documentary evidence they intend to use to support their claims or defenses.

---

[4]    Further, the Insolvency Administrator seeks to recover at least roughly €131 million for allegedly jeopardizing the interests of creditors, contrary to public policy.  The alleged damages partially overlap with those of the Avoidance Claims.  In total, the Insolvency Administrator claims to be entitled to recover approximately €174.5 million.

22.    The rules of evidence in German civil litigation are based on the following principles:

a)    According to the principle of party control over proof and facts, which is a cornerstone of German civil litigation (Stürner/Murray, German Civil Justice, Carolina Academic Press 2004, p. 158 *et seq.*), litigants themselves must identify and bring forward evidence, and ask for court orders if necessary.

b)    Facts to be proven must be directly relevant to the legal basis of the claim or the defense ("strict relevance standard").[5]

c)    Facts must be submitted to the court in as much detail as is necessary to substantiate all of the elements of a claim.  If asserted facts are contested by the opposing party, further substantiation may be necessary.  (*See* German Federal Court of Justice (*Bundesgerichtshof*), Judgment of June 3, 2014, Case No. VI ZR 394/13, Neue Juristische Wochenschrift 2014, 2797 at ¶ 20).  This  substantiation standard may be eased under limited circumstances.

23.    The ZPO imposes no general duties on parties to produce evidence to each other. Rather, contested facts need to be proven to the court in the event that the court deems proof of such facts necessary for its decision.   Absent a specific court order, neither party has any obligation to disclose any documents to the other.  The reason for this is that, in the German legal

---

[5]    The court will determine which facts the parties agree on (and are therefore in principle binding for the court) and which facts are contested and need therefore be proven by the party bearing the burden of proof.

system, no party can be expected to provide evidence in order to help the opponent to win its case.  *See* Greger, in: Zöller, ZPO [commentary on German Code of Civil Procedure], 32nd edition, at Vor § 284 ¶ 34.

24.    German courts can order documents to be produced if a party specifically identifies them in its pleadings or if the evidence-seeking party has an independent right to possession or access to the documents sought under substantive civil law.  *Cf.* Section 142, 421–423 of the ZPO.  However, it merits emphasis that substantive law rules granting rights to access documents in the possession of the adversary or a third party are very rare.[6]  Even when granted, the orders are narrowly circumscribed.

25.    Even to file an application for the production of documents requires the moving party to have detailed facts about the documents it seeks.  Indeed, to obtain an order (against the adversary or a third party), the petition must include, *inter alia*: (a) a precise, substantiated description of the documents sought (*see* Section 424 no. 1 of the ZPO) and why the applicant believes they exist and are in the respondent's possession or control (*see* Section 424 no. 4 and Section 430 of the ZPO); (b) a substantiated description of the facts to be proved by the documents (*see* Section 424 no. 2 of the ZPO); and (c) to the extent possible, a description of the content of the documents (s*ee* Section 424 no. 3 of the ZPO).

26.    Although a reform enacted in 2001 formally expanded the power of German courts to order production of documents, a legislative memorandum accompanying the reform bill specifically explains that the amendment was not meant to introduce U.S.-style discovery

---

[6]     For example, members of a partnership have a right to inspect the partnership's records. This is an example of a situation in which a party has a substantive right to access documents in the possession of another.  *See* Section 716 ¶ 1 of the German Civil Code (BGB).

into German law or even to permit discovery-like tools.  *See* Proceedings of the 14th *Bundestag*, the German federal assembly, 14/6036, pp. 120-121.    Given the strict relevance and substantiation standards that are cornerstones of the ZPO, German courts are still rather reluctant to grant orders based on Section 142.

27.    In light of these rules, there is no effective way for Bauknecht, Whirlpool or Bitzer to obtain access in any German litigation to the documents that they may need to defend themselves, including documents that Andersch considered or relied on when expressing the opinions in the Andersch Report, or other internal Alno documents in the possession, custody or control of the Insolvency Administrator.  In particular, Bauknecht, Whirlpool, and Bitzer have no procedural or substantive right to receive them under the ZPO unless the Insolvency Administrator specifically refers to such documents in any German court pleadings.  This potentially allows the Insolvency Administrator to preclude access to documents that supplement or contravene his own evidence simply by declining to make reference to that document.  Thus, at the outset of any litigation in Germany, Bauknecht, Whirlpool and Bitzer will have no way to get access to internal Alno documents which may be necessary to prepare an effective defense.

**Unilateral U.S. Discovery Would Prejudice Bauknecht, Whirlpool and Bitzer**

28.    In litigation in Germany, there is a risk that it will not suffice for Bauknecht, Whirlpool or Bitzer to generally deny the conclusions in the Andersch Report, as the Andersch Report would be treated as substantiated submissions in the form of a private expert opinion ("Privatgutachten").    Rather, Bauknecht may be required to make a substantiated counterstatement itself, explaining either in whole or in part why the assertions in the Andersch Report are incorrect.  Moreover, to level the playing field, and to develop theories based on facts

that supplement, or even contravene, the evidence that the Insolvency Administrator decides to offer, Whirlpool, Bauknecht and Bitzer will require access to the documents that Andersch considered or relied on when rendering its opinions in the Andersch Report, as well as additional internal documents of Alno bearing on the company's financial health, including, *inter alia*, information related to the liquidity and indebtedness of Alno.[7]

29.    Thus, granting one-sided, broad, U.S.-style discovery to the Foreign Representative, without also allowing Bauknecht, Whirlpool and Bitzer to obtain information, including information described in the paragraph above, from the Insolvency Administrator would only exacerbate the informational disparity described above.  This would result in the Insolvency Administrator having broad access to a further bevy of documents with which to develop the record before a German court, while depriving Bauknecht, Whirlpool and Bitzer of access to documents that were omitted from, or even contravene, the Insolvency Administrator's presentation of evidence.  The result would allow the Insolvency Administrator to develop a one-sided record at the expense of Bauknecht, Whirlpool and Bitzer.

*        *        *

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

---

[7]    Information concerning the liquidity of Alno would include, for example, documents relating to the company's cash and near cash positions.  Information concerning Alno's indebtedness would include, without limitation, documents related to standstill agreements between Alno and its creditors, including informally documented standstill agreements that Andersch may have failed to consider when rendering the opinions in the Andersch Report.

Executed in London, United Kingdom on this 10th day of December, 2018.

Dr. Hans-Patrick Schroeder